

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

*Sandra Wilkinson*  *Suite 400*  DIRECT: 410-209-4921
*Chief, Major Crimes*  *36 S. Charles Street*  MAIN: 410-209-4800
*Sandra.Wilkinson@usdoj.gov*  *Baltimore, MD 21201-3119*  FAX: 410-962-0716

October 1, 2013

Gary E. Proctor, Esq.                    Jonathan Zucker, Esq.
Law Offices of Gary E. Proctor LLC       Law Office of Jonathan Zucker
8 East Mulberry Street                   1350 Connecticut Avenue, NW, Suite 202
Baltimore, MD 21202                      Washington, D.C.  20036

RE:   <u>United States of America v. Jose Morales</u>, RWT 12-0480

Dear Counsel:

Set forth below is additional information for the trial in the above-captioned matter. Some of the material is clearly *Jencks* and *Giglio*.  The Government may be providing, as a courtesy, material which is not discoverable under Rule 16, Jencks, Giglio or Brady.  The fact that certain non-discoverable materials are provided in no way obligates the Government to provide all non-discoverable materials, and the fact that certain non-discoverable materials are provided should never be taken as a representation as to the existence or non-existence of any other non-discoverable materials.

You are not to share this material with any third party other than your client.  Your client is not permitted to have a copy of this letter under any circumstance.  You need to advise us immediately if you do not intend to abide by these conditions as the government will then seek court intervention.

1. With regard to Marshawn Stokes, the following are excerpts from Mr. Stokes' Presentence Report:
   a. The government intends to seek an upward adjustment because Mr. Stokes conspired to kill several government witnesses if they would not refuse to testify.  Documents admitted into evidence at trial indicate that Stokes confronted Danielle Turner in the gym of the BCDC in April 1999 and told her not to come to court.  Stokes suborned the perjury of Holly Brown by recruiting her to come to court and give false testimony—which she did.  In June and July, 1998, Stokes wrote two letters addressed to the residents of Schering Road (including Askia and Williams) telling them to confront specific named witnesses and potential witnesses, make sure they were not going to cooperate and try to get them to sign affidavits.
   b. Mr. Stokes was interviewed at the Baltimore City Detention Center, Maryland on August 11, 1999.  Mr. Stokes stated that he "was not the trigger man."  He said that

Letter to Counsel
October 1, 2013
Page 2

        he feels "railroaded" by the government whom he accused of soliciting testimony from people who claim they knew him but whom he has never seen in his life, in exchange for better plea deals and monetary compensation. He indicated that no one testified that they saw him shooting at Anthony Hamilton. Only Tranell Williams testified that he saw him shooting the bullets hitting the ground. Regarding the Tanfoglio firearm that was recovered in the possession of an individual the government claims was Stokes' friend, Stokes denies knowing this individual. Mr. Stokes alleges that the testimony established that Stokes knew this individual's two younger brothers, not their brother who was caught with the firearm. He alleges the government ignored this testimony.

    Other Rule 16 and documentary materials (including physical evidence) continues to be available for your inspection and review upon request.

                                      Very truly yours,

                                      Rod J. Rosenstein
                                      United States Attorney


                                 By:_____/s/_____
                                    Sandra Wilkinson
                                    Martin Clarke
                                    Assistant United States Attorneys